For the reasons that follow, with reservations, I join the majority in this matter and affirm the actions of the trial court. The permanent termination of parental rights is the civil equivalent of the death penalty. Two lives are being permanently changed in this proceeding, and I view the procedure with caution. While I do not believe that justice for the child has been achieved in this matter, that outcome certainly is not the result of any lack of effort by the trial court. The appellant in this matter was literally given years to demonstrate that she was ready, willing, and able to care for her child. Years. And yet, at the end of the day the court clearly did not have sufficient evidence upon which it could rely in making this monumentally important decision. Appellant failed to provide the court with the evidence it so patiently requested. It simply is not legally sufficient for a litigant to ask that fundamental decisions be made on the basis of blind faith. And in the final analysis, that is all the court had to rely on to either believe, or disbelieve, appellant's version of her current readiness to be a parent.
Appellant would have the court system believe that the most important issue in her life is her child. The record is clear that three issues needed to be resolved in order for the juvenile court to return custody to the mother. In no particular order, the court needed to be reassured that appellant's unstable past in the areas of housing, employment, and sobriety had been brought under control. Yet appellant made that task all the more difficult by voluntarily placing 2,000 miles between herself, her child, and the court. While re-location is certainly permissible, and in some cases desirable, the fact remains that the well-being of this child was being litigated in Painesville, Ohio and not Las Vegas, Nevada.
It is said that "all the kings horses and all the kings men can't put Humpty Dumpty back together again." Nowhere is that tragic conclusion more true than in a child custody case. All the hard working social workers, well intentioned lawyers, and experienced judges simply cannot undo the damage which has been done to this particular mother/child relationship. While courts are clearly mandated to look to the future when dealing with the best interest of a child, it is unrealistic to believe they will be blind to the past.
The record is clear that this child was in danger when she was in the custody of her natural mother. The state had a compelling interest in taking the child into temporary custody. Therefore, the sole question has always been whether or not the mother had demonstrated her readiness to resume the task of caring for this child. She did not. Unlike days gone by, the Ohio Legislature has clearly enunciated the public policy that children are not to be placed permanently into foster care to await their eighteenth birthday.
Appellant had the burden in this matter to demonstrate that her future actions would be distinctly different from her past performance. She was given adequate time to prepare for her day in court. And in the meantime, while she delayed, her child remained in foster care.
A child is waiting. To remand this matter for further long-distance litigation would be to deprive this child of a childhood. The day in court was fair and impartial and the outcome, while harsh, was warranted. The child's interest in a childhood outweighs the mother's failure to cooperate in the fact-finding exercise. For that reason alone, the trial court's judgement should be affirmed.